**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-03244-SBP

E.D.F.,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

## OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

      This civil action is before the court pursuant to Title XVI, 42 U.S.C. § 1381, *et seq.,* of the Social Security Act (the "Act"), for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff[1] E.D.F.'s application for supplemental security income ("SSI"). After consideration of the opening and response briefs—Plaintiff did not file a reply brief—and the administrative record, and for the reasons set forth in this order, the Commissioner's decision is AFFIRMED as follows.

## BACKGROUND

      Plaintiff seeks judicial review of the Commissioner's final decision denying her SSI application filed on September 18, 2020, in which she claimed that she was disabled beginning on June 1, 2017. *See* ECF No. 10 ("Opening Brief") at 1; ECF No. 9-2 at 11.[2] An Administrative

---

[1] This Opinion and Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2(b).

[2] When citing to the Administrative Record, the court utilizes the docket number assigned by the

Law Judge ("ALJ") held an evidentiary hearing, ECF No. 9-2 at 180-209 (June 9, 2022 hearing transcript). The ALJ thereafter issued a ruling on June 27, 2022, denying Plaintiff's SSI application. *Id*. at 11-39.[3] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's decision, rendering it final on November 18, 2022. *Id.* at 1. Plaintiff timely filed her complaint with this court seeking review of the Commissioner's final decision. EFC No. 1. All parties consented to the jurisdiction of a magistrate judge, ECF No. 11, and jurisdiction is proper pursuant to 42 U.S.C. § 1383(c)(3).

## FACTUAL BACKGROUND

Plaintiff was 26 years old on the date she filed her application. ECF No. 9-2 at 29. She completed high school. *Id*. at 30. The ALJ found that Plaintiff had no past relevant work. *Id*.

In her application, Plaintiff asserted that she was disabled due to a closed head injury with cogwheel rigidity, catamenial epilepsy and non-epileptic seizures, postural orthostatic tachycardia syndrome ("POTS"), internal derangement of the left knee, learning disability, visuospatial deficit, and convergence insufficiency. *Id*. at 19. Plaintiff also alleged that she used a

---

court's Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

In some instances, the court refers only to the exhibit numbers cited by the ALJ. However, the court has reviewed each of the exhibits cited by the ALJ. They are contained in the Administrative Record filed at ECF No. 9 and its attachments.

[3] In the final decision, the ALJ noted that "[a]lthough supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912." ECF No. 9-2 at 12. The ALJ thus considered whether Plaintiff has been disabled only since the date she filed her application—not the earlier, alleged onset date. *Id*.

cane. *Id*.

The claim was denied initially on June 28, 2021, and upon reconsideration on January 4, 2022. *Id*. at 11. After a hearing held on June 9, 2022, ALJ Kathleen Laub issued an unfavorable decision dated June 27, 2022. *Id*. at 8-39.

## ALJ's DECISION

In the final decision, the ALJ applied the five-step sequential process for determining whether an individual is disabled outlined in 20 C.F.R. § 416.920(a).[4] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. ECF No. 9-2 at 14. At step two, the ALJ found that Plaintiff had severe impairments of "catamenial epilepsy, nonepileptic seizures, postural orthostatic tachycardia syndrome (POTS), vestibular

---

[4] "The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

    1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
    2. The ALJ must then determine whether the claimed impairment is 'severe.' A 'severe impairment' must significantly limit the claimant's physical or mental ability to do basic work activities.
    3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
    4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
    5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity."

*Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *2 (D. Colo. Jan. 12, 2011); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (setting forth five-step sequential evaluation process).

abnormality, convergence insufficiency, left knee degenerative joint disease status post meniscal repair, generalized anxiety disorder, neurocognitive disorder, Irlen syndrome, specific learning disorder in reading and math." *Id*. at 14.[5]

At step three, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the disability regulations deemed to be so severe as to preclude substantial gainful employment at step three. *Id*. at 15-17.

The ALJ next determined that Plaintiff had the residual functional capacity (the "RFC") to perform a reduced range of "light" work as defined in 20 C.F.R. § 416.967(b),[6] with the following limitations:

> she can stand and/or walk for a total of four hours in an eight-hour workday.  She can never climb ladders, ropes, or scaffolds.  She can never tolerate exposure to hazards such as unprotected heights or heavy mechanical machinery, like a jackhammer or tractor.  She can never drive commercially.  She can occasionally climb ramps or stairs, balance, stoop, kneel, and crouch.  She can never crawl. She can occasionally reach overhead with the bilateral upper extremities. She can tolerate occasional exposure to temperature extremes.  She can tolerate moderate noise.  She can tolerate occasional exposure to pulmonary irritants, such as fumes, odors, dusts, gases, or poor ventilation.

---

[5] At step two, the ALJ also noted that the record mentioned obesity and eczema as impairments, but the ALJ concluded there was no medical evidence in the record to support those as medically determinable impairments. *Id*. Plaintiff does not raise any issues concerning those conditions.

[6] The regulations define "light work" as that which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

She can perform work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time of up to 30 days and has a reasoning level of no higher than two. She can sustain ordinary routines, understand, carry out and remember simple instructions, and use judgment in making simple work-related decisions. She can attend and concentrate for two-hour periods totaling a normal eight-hour workday with usual work breaks. She can maintain persistence and pace.

She can respond appropriately to supervision, coworkers, and usual work situations. She can tolerate occasional interaction with coworkers. but should not have to engage in any teamwork or collaboration with them. She can tolerate brief, meaning lasting no more than 10 minutes at one time, interaction with the general public for up to 10% of an average workday.

She can adapt to occasional changes in a routine work setting. She can perform low stress work, which is defined as work requiring at most occasional decisions and occasional changes in work duties and tasks. She can work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline.

*Id.* at 17-18 (paragraph breaks added). The ALJ then discussed the evidence on which she based the RFC, including Plaintiff's testimony and assertions, letters from Plaintiff's family and friends, medical source opinions, and the prior administrative findings. *Id.* at 18-29.

At step four, the ALJ found that Plaintiff had no past relevant work. *Id.* at 29. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff was capable of performing, such as a price marker, laundry worker, or housekeeper. *Id.* at 29-30. The ALJ therefore concluded at step five that Plaintiff was not disabled, as defined by the Social Security Act, from her application date through the date of the ALJ's decision. *Id.* at 30.

## STANDARD OF REVIEW

In reviewing the final decision, this court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are

supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—**such relevant evidence as a reasonable mind might accept as adequate to support a conclusion**.

*Id.* at 102-03 (cleaned up, emphasis added); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133). This court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (explaining that the court may not "displace the Commissioner's choice between two fairly conflicting views").

## ANALYSIS

On appeal, Plaintiff asserts two claims of error. First, she contends that the ALJ should have, but did not, specifically limit Plaintiff's RFC to "one-to-two step tasks" and only

"superficial" interaction with others. Second, Plaintiff contends that the ALJ erred in analyzing

the medical source opinions and administrative findings with respect to Plaintiff's mental

limitation in maintaining pace and physical limitation of needing to use a cane.

I.      *The Plaintiff's Mental and Social Impairments in the RFC*

        A.      *"One-to-Two Step" Tasks*

        Plaintiff first takes issue with the ALJ not specifying in the RFC that Plaintiff is limited

not just to "simple tasks" but to "one-to-two step" tasks. The RFC recognizes that Plaintiff

> can perform work that needs little or no judgment to do simple duties that can be
> learned on the job in a short period of time of up to 30 days and has a reasoning
> level of no higher than two.   She can sustain ordinary routines, understand, carry
> out and remember simple instructions, and use judgment in making simple work-
> related decisions.

ECF No. 9-2 at 18.

        Plaintiff argues that because the ALJ found persuasive the prior administrative findings

(by Stacy Koutrakos, Psy.D., ECF No. 9-3 at 345, and William Farrell, Ph.D., ECF No. 9-3 at

310) that Plaintiff is limited to one-to-two step tasks, the ALJ could not simply limit Plaintiff's

RFC to "simple duties" and a reasoning level of no more than two. Rather, in Plaintiff's view,

the ALJ had to incorporate the specific finding of one-to-two step tasks in the RFC and limit

Plaintiff's reasoning level to no more than one (the minimum reasoning level) to avoid reversible

error.

        The Commissioner's response on this issue is correct. "[F]inding an opinion 'generally

persuasive' does not mean that it must be incorporated into the RFC wholesale." *J.S.M. v.

Kijakazi*, No. 22-cv-00884-RM, 2023 WL 2033747, at *3 (D. Colo. Feb. 15, 2023) (citing *Chapo

v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)); *see also* 20 C.F.R. § 416.946(c) (the ALJ "is

responsible for assessing your residual functional capacity."). Dr. Farrell also referred to the limitation to one-to-two step tasks only in a parenthetical to "simple" tasks. ECF No. 9-3 at 310. The court sees no error in the ALJ understanding the two ("simple" and "one-to-two step" tasks) in Dr. Farrell's opinion to be synonymous. The court is also persuaded by a case the Commissioner cites, finding the restriction to unskilled work (i.e., tasks that can be learned within 30 days) also suffices for similar, moderate limitations in concentration, persistence, and pace such as Plaintiff's. ECF No. 14 ("Response Brief") at 11 (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)). As in *Vigil*, the court sees no error in this case in the ALJ reflecting Plaintiff's limitations in these mental functions by finding she can perform only simple, unskilled work in the RFC.

Nor does the court see any error in the ALJ restricting Plaintiff to reasoning level two instead of reasoning level one. This finding is supported by the substantial evidence that the ALJ cites, for instance, of Plaintiff being found of above average intelligence (ECF No. 9-2 at 16, 23 citing ECF No. 9-9 at 1590, Ex. B21F) and of her demonstrated alertness, appropriate understanding, and judgment during medical appointments. *Id*. at 29 (citing ECF No. 9-8 at 1061 (Ex. B12F/21); ECF No. 9-9 at 1554 (Ex. B18F/6); ECF No. 9-12 at 2054 (Ex. B38F/27)). The court has reviewed the ALJ's citations to these medical records, and the ALJ accurately described them.

And in any case, the court agrees with the Commissioner that any error on this issue was harmless. *See, e.g.*, *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court " may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative

factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145). Plaintiff's Opening Brief shows that one of the three jobs that the Vocational Expert identified requires only a reasoning level one. Opening Brief at 7 (reflecting that housekeeping requires "R1"). The court is not persuaded by Plaintiff's argument that housekeeping (or the other two jobs identified by the Vocational Expert) involve tasks of more than two steps. As the Commissioner notes, the Dictionary of Occupational Titles ("DOT") defines housekeeping as requiring only one-to-two step instructions. Response at 12 n.4 (citing DOT No. 323.687-014, Cleaner, Housekeeping, 1991 WL 672783 (Jan. 1, 2016) ("Reasoning: Level 1 - Apply commonsense understanding to carry out simple one- or two-step instructions.") Accordingly, even if the ALJ erred in interpreting one-to-two step tasks as simple, unskilled tasks, the error was harmless because one of the jobs that the ALJ found Plaintiff can perform is in fact defined as requiring only one-to-two step instructions.

        B.      *"Superficial" Interactions With Others*

      Plaintiff also argues error because the RFC does not limit her to "superficial" interaction with others. For this function, the RFC states:

> She can respond appropriately to supervision, coworkers, and usual work situations.  She can tolerate occasional interaction with coworkers[,] but should not have to engage in any teamwork or collaboration with them.  She can tolerate brief, meaning lasting no more than 10 minutes at one time, interaction with the general public for up to 10% of an average workday.

ECF No. 9-2 at 18.

      Plaintiff notes that the ALJ found the prior administrative findings of the State agency psychological consultants (Drs. Koutrakos and Farrell) "generally persuasive" (*id*. at 27), and the

consultants found Plaintiff's ability to interact with others is limited to "superficial" interactions. Opening Brief at 9 (citing ECF No. 9-3 at 311, 345). The ALJ used that specific wording—superficial interactions—in summarizing the consultants' findings. *See also* ECF No. 9-2 at 28 (noting the consultant on initial administrative review "determined the claimant is able to interact on a superficial basis with the general public, coworkers, and supervisors," and the consultant on administrative reconsideration limited Plaintiff to "settings with superficial interactions"). Plaintiff argues the RFC therefore must likewise reflect that she is limited to "superficial" interactions, instead of the time-centric, "occasional" and "brief" interactions of no more than ten minutes each and totaling no more than ten per cent of the workday that the ALJ found in the RFC.

The Commissioner's response on this issue is correct. Again, just because the ALJ found the consultants' findings "generally persuasive" does not mean that the ALJ must adopt their assessments verbatim in the RFC. Response Brief at 15 (citing *J.S.M.*, 2023 WL 2033747, at *3; 20 C.F.R. § 416.946(c)). The combination of restricting Plaintiff to simple, unskilled work with the restriction to only occasional and brief interactions is consistent with the consultants' limitation of Plaintiff to "superficial" interactions. *See, e.g.*, *Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015) ("Interacting with supervisors in the course of routine supervision over simple work is tantamount to the 'superficial' interaction typically encountered in jobs involving such work. To conclude otherwise would parse the ALJ's language too finely."). The case on which Plaintiff relies, *Parker v. Comm'r, SSA*, 922 F.3d 1169 (10th Cir. 2019), *republished at* 772 F. App'x 613 (10th Cir. 2019), instead involved an actual conflict between the agency physicians' opinions that the claimant could only accept infrequent interactions with others and

the ALJ's contrary finding that the claimant could handle frequent interactions. *Id*. at 615-16. There is no such conflict here.

Even if the ALJ had erred on this issue, it would be harmless. The jobs that the Vocational Expert identified for Plaintiff require the least possible amount of interaction with others. Response Brief at 16-17 (citing DOT references reflecting the three jobs of price marker, laundry worker, and housekeeper had the lowest rating possible for interacting with others).

In short, the ALJ did not err concerning Plaintiff's mental and social limitations in her RFC.

II.      *The ALJ's Analysis of the Medical Opinions and Prior Administrative Findings*

Plaintiff next argues that the ALJ erred in weighing the opinions of a psychologist and several physicians of record.

A.      *The Opinion of Brittney Ziskind, Ph.D.*

Plaintiff first points to the opinion of the psychological consultative examiner, Brittney Ziskind, Ph.D., in which Dr. Ziskind found Plaintiff was markedly impaired in maintaining pace. Opening Brief at 13-14.[7] Dr. Ziskind examined Plaintiff on June 15, 2021. ECF No. 9-9 at 1586-93 (Ex. B21F, report).

In assessing the mental status opinion evidence, the ALJ first addressed the prior administrative findings from the state agency psychological consultants on initial review and reconsideration:

> At the initial determination level, the State agency consultant assessed that the claimant's impairments result in **moderate limitation** in understanding,

---

[7] Plaintiff notes that Dr. Ziskind also opined that Plaintiff was markedly impaired in sustaining concentration, but Plaintiff does not argue that finding was in error. Opening Brief at 13-15.

remembering, and applying information, mild limitation in interacting with others, moderate limitation in concentrating, persisting, and **maintaining pace,** and moderate limitation in adapting or managing oneself.  The State agency consultant opined the claimant can understand, recall, and perform simple tasks of one to two steps.  Additionally, **the claimant is able to focus for two-hour periods with routine breaks and pace and persist for eight-hour workdays and 40-hour workweeks despite psychological symptoms.**  The State agency consultant determined the claimant is able to interact on a superficial basis with the general public, coworkers, and supervisors, which is inconsistent with the mild limitation in social functioning and can adapt to a work setting with some changes.

At the reconsideration level, the State agency consultant indicated the claimant's impairments result in moderate limitations in the areas of work-related mental functioning known as the "paragraph B" criteria.  According to the State agency consultant, the claimant can understand, remember, and persist at one to two step tasks in settings with superficial interactions and she can respond appropriately to simple, routine work changes.  In support of these opinions, the State agency consultants cited to evidence of normal findings on mental status examinations, including that the claimant was oriented with intact memory and attention/concentration.

ECF No. 9-2 at 28-29 (emphasis added).[8]

The ALJ found the State agency consultants' opinions (other than the original opinion of only mild limitation in social functioning) "generally persuasive" because they were "generally consistent with the objective medical evidence, including that the claimant had routinely normal mental status findings during medical appointments." *Id*. at 28. The ALJ then found, based on several medical records, that Plaintiff has *additional* mental or social limitations than what the consultants had found:

However, the undersigned finds the claimant has additional limitations regarding low stress work, production rate pace, and brief interaction with the general[] public

---

[8] The court has reviewed the State agency consultants' opinions, and the ALJ accurately summarized the consultants' findings. *See, e.g.*, ECF No. 9-3 at 311-14, 318-330 (Exs. B3A, B5A).

based on the claimant's anxiety and variable attention and concentration during the psychological consultative examination.

*Id.* at 29.[9] Plaintiff does not challenge the ALJ's finding that the State agency consultants' opinions of moderate limitations in pace were generally persuasive.

The ALJ then went on to address the opinion of Dr. Ziskind, finding her opinions persuasive to the extent she found Plaintiff has mild and moderate impairments and unpersuasive to the extent she found marked impairments. The ALJ summarized Dr. Ziskind's report in detail:

> The opinion of the psychological consultative examiner, Brittney Ziskind, Ph.D., is partially persuasive (Exhibit B21F). According to Dr. Ziskind, the claimant's ability to understand, remember, or apply simple directions and instructions is mildly limited, and her ability to understand, remember, or apply complex directions and instructions is markedly limited. Dr. Ziskind opined the claimant's ability to use reason and judgment to make work-related decisions and to interact adequately with supervisors, coworkers, and the public is mildly limited. She further stated the claimant's ability to sustain concentration and perform a task at a consistent pace is markedly limited. Dr. Ziskind determined the claimant's ability to sustain an ordinary routine and regular attendance at work is mildly limited. Moreover, her ability to regulate her emotions, control her behavior, and maintain her well-being is moderately limited. Dr. Ziskind determined the claimant's ability to maintain personal hygiene and appropriate attire, to be aware of normal hazards, and to take appropriate precautions is mildly limited.

ECF No. 9-2 at 28 (citing ECF No. 9-9 at 1586-93, Ex. B21F). The ALJ then explained the extent to which she found Dr. Ziskind's opinions to be partially persuasive and unpersuasive, and her reasons:

---

[9] The ALJ cites ECF No. 9-7 at 951 (Ex. B10F/130); ECF. No. 9-8 at 1057, 1061 (Ex. B12F/17, 21); ECF No. 9-9 at 1554, 1557 (Ex. B18F/6, 9); *id.* at 1561-70 (Ex. B19F); *id.* at 1586-93 (Ex. B21F); *id.* at 1681 (Ex. B23F/85); and ECF No. 9-12 at 2034, 2054 (Ex. B38F/7, 27). It appears the ALJ cited these specific records to support several findings. In the court's review, ECF No. 9-9 at 1590 most clearly supports this specific finding as to Plaintiff's anxiety, variable attention, or variable concentration.

> This opinion is generally supported by Dr. Ziskind's examination findings, including that the claimant was tense, anxious, and in mild distress during the examination and that her attention and concentration fluctuated. However, the opinion that the claimant's ability to sustain concentration and perform a task at a consistent pace is markedly impaired is inconsistent with the claimant's ability to perform simple calculations, perform serial threes testing, and count backward from 20 during the examination. This portion of the opinion is also inconsistent with the objective medical evidence, including observations that the claimant was alert and oriented and demonstrated appropriate understanding and judgment during medical appointments and in her thorough, detailed, well organized emails to her treatment providers.

ECF No. 9-2 at 28-29 (citing ECF. No. 9-8 at 1061 (Ex. B12F/21); ECF No. 9-9 at 1554 (Ex. B18F/6); ECF No. 9-12 at 2054 (Ex. B38F/27)).

The ALJ thus found Dr. Ziskind's opinion that Plaintiff had a marked limitation in maintaining pace to be unpersuasive because of (a) inconsistency with the largely normal mental function results during Dr. Ziskind's examination of Plaintiff, and (b) inconsistency with the objective medical evidence in the record.

Plaintiff argues that the ALJ erred in finding Dr. Ziskind's opinion that she had a marked limitation in pacing unpersuasive. For the reasons that follow, the court respectfully disagrees.

For claims filed on or after March 27, 2017—as is the case here because Plaintiff filed her application in 2020—the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from a claimant's own medical sources. 20 C.F.R. § 416.920c.[10] Instead, under

---

[10] By contrast, "for claims filed *before* March 27, 2017, the Commissioner 'gives more weight to medical opinions from claimants' treating sources." *S.L. v. Comm'r*, No. 20-cv-01953-RMR, 2022 WL 897104, at *8 (D. Colo. Mar. 28, 2022) (cleaned up) (citing 20 C.F.R. § 404.1527(c)(2)).

the applicable regulation, the ALJ will consider the persuasiveness of each medical source opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(c)(1)-(c)(5). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 416.920c(b)(2); *Miles v. Saul*, No. 20-cv-1456-WJM, 2021 WL 3076846, at *2-3 (D. Colo. July 21, 2021).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Thus, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Miles*, 2021 WL 3076846, at *2 (quoting *Vellone v. Saul*, No. 20-cv-00261(RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)); *see also Lenoble v. Kijakazi*, No. 22-cv-00094-MEH, 2022 WL 16855693, at *7 (D. Colo. Nov. 10, 2022) ("supportability" is the extent to which the medical source supports his or her opinion with objective medical evidence and an explanation).

Consistency, on the other hand, means that "[t]he more consistent a medical opinion(s) or

prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). Consistency thus "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles*, 2021 WL 3076846, at *2-3 (citing 20 C.F.R. § 416.920c(c)(2)); *see also Lenoble*, 2022 WL 16855693, at *7 ("consistency" is the extent to which the evidence from the other medical and nonmedical sources is consistent with the opinion).

The ALJ must explain his or her approach with respect to the supportability and consistency factors when considering a medical opinion: "we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id*. The ALJ is not required to expound on the remaining three factors unless two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Miles*, 2021 WL 3076846, at *3 (citing inter alia 20 C.F.R. § 416.920c(b)(2)-(3)).

The court reviews the ALJ's evaluation of Dr. Ziskind's opinions to ascertain whether the ALJ applied the correct legal standards and whether "substantial evidence supports the ALJ's decision" to find Dr. Ziskind's opinion in part unpersuasive. *Johnston v. Kijakazi*, No. 20-cv-01366-PAB, 2022 WL 1439112, at *5 (D. Colo. May 6, 2022) (reviewing ALJ's decision that

found some opinions of a medical source to be persuasive, and others unpersuasive). *See also L.A.M. v. Kijakazi*, No. 21-cv-00983-NYW, 2022 WL 3139031, at *11-12 (D. Colo. Aug. 4, 2022) (reviewing ALJ's findings that two medical sources' opinions were unpersuasive and finding no reversible error because the findings were "supported by substantial evidence"). Additionally, so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, SSA,* No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022)[11] (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

Here, the ALJ applied the correct legal standards. The ALJ states that she considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 416.920c. ECF No. 9-2 at 24. The ALJ found Dr. Ziskind's opinion that Plaintiff had a marked impairment in maintaining pace unpersuasive because it was (1) not supported by Dr. Ziskind's own examination findings—which the ALJ summarized in detail in the decision— and (2) not consistent with the medical evidence of record that reflected Plaintiff was alert, oriented, and had appropriate understanding and judgment during medical appointments. *Id.* at 28-29. As such, the ALJ's order properly assessed the supportability and consistency of Dr.

---

[11] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

Ziskind's opinion when determining and rejecting its persuasiveness, as required by 20 C.F.R. § 416.920c(b)(2), which is the correct legal standard. *Miles*, 2021 WL 3076846, at *3; *see also P.T. v. Comm'r of Soc. Sec.,* No. 22-cv-02926-STV, 2023 WL 8108569, at *8 (D. Colo. Nov. 17, 2023) (ruling that the court was able to "follow the [ALJ's] reasoning in conducting [its] review [of the ALJ's analysis of a medical opinion], and can determine that correct legal standards have been applied") (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

Substantial evidence supports the ALJ's findings concerning Dr. Ziskind's opinion. The ALJ noted the *lack* of support in Dr. Ziskind's examination report for her ultimate opinion that Plaintiff had a marked limitation in maintaining pace. Plaintiff takes issue with the fact that the ALJ considered Plaintiff's reported *mental* functioning in Dr. Ziskind's exam as relevant to maintaining pace. But Plaintiff recognizes that Dr. Ziskind was the consultative *mental* examiner and that "maintaining . . . pace" is one of the four functional limitation areas for the Paragraph B criteria of "*mental* impairments." Opening Brief at 3, 4, 13 (emphasis added, citing 20 C.F.R. § 416.920a, the Commissioner's regulation for the "[e]valuation of mental impairments"). Maintaining pace is a mental function, and Plaintiff does not explain why her ability to perform the mental tests in Dr. Ziskind's examination is not relevant to this mental function.

The Commissioner argues that the record indicates the examination with Dr. Ziskind took at least two hours. Response Brief at 13, citing ECF No. 9-2 at 28, ECF No. 9-9 at 1584. It is unclear to the court how the Commissioner estimates this examination lasted at least two hours; the cited page requests Dr. Ziskind to conduct two types of examinations, but it does not specify the duration of the examination. In any case, the examination was long enough to support a written report of over seven, single-spaced pages, and Plaintiff was nonetheless able to perform

the several mental tasks that Dr. Ziskind noted. The ALJ also points to the specific facts concerning Plaintiff's performance on the mental tests in Dr. Ziskind's report that she found were inconsistent with a marked limitation. Thus, the ALJ's finding has substantial evidentiary support. The ALJ was also not required to specifically address the supportability or consistency of *each* of Dr. Ziskind's opinions (20 C.F.R. § 416.920c(b)(1)), and the court is able to follow the ALJ's reasoning that Dr. Ziskind's examination did not support a marked impairment in Plaintiff's maintaining pace.

Turning to the ALJ's second finding—that a marked limitation in maintaining pace was inconsistent with the objective medical evidence—this too is supported by the substantial evidence that the ALJ cites: multiple records reflected that Plaintiff was able to maintain alertness and understanding over the course of several medical appointments. ECF No. 9-2 at 28-29 (citing ECF No. 9-8 at 1061 (Ex. B12F/21); ECF No. 9-9 at 1554 (Ex. B18F/6); ECF No. 9-12 at 2054 (Ex. B38F/27)). And the ALJ's finding is further supported by the prior administrative medical findings of the State agency psychological consultants, which the ALJ discussed immediately prior to finding Dr. Ziskind's opinion as to a marked limitation unpersuasive. ECF No. 9-2 at 27-28 (explaining that the state psychological consultants found Plaintiff had a moderate limitation in maintaining pace).

In sum, this court is obliged to confine its review to the question of whether *the evidence on which the ALJ relied* was such "evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. Here, the court concludes that it was. Because substantial evidence supports the ALJ's finding that to the extent Dr. Ziskind opined that Plaintiff had a marked limitation in pacing, the opinion was unsupported by the examination of

Plaintiff, the court finds no reversible error in the ALJ's finding in the RFC that Plaintiff had only a moderate impairment in her ability to maintain a pace.

  B.  *The Opinions of Dr. Fletcher, Dr. Painton, and Dr. Hom*

  Plaintiff also argues that the ALJ erred in not adopting the opinions of the physical consultative examiner, Zachary Fletcher, D.O., the agency physician Ronald Painton, M.D., and the agency physician Cynthia Hom, M.D. Opening Brief at 15-19. In particular, Plaintiff argues that the ALJ should have found persuasive these physicians' opinions that Plaintiff needs to use a case at all times, should be limited to sedentary work, lifting no more than five pounds frequently, standing no more than three to four hours in an eight-hour day, and lifting with only one hand, as she has difficulty balancing and must use a cane in her right (dominant) hand. Opening Brief at 15. Plaintiff argues that the ALJ improperly relied on findings in Dr. Ziskind's report of the mental status examination to call into question Dr. Fletcher's opinion of Plaintiff's physical function limitations.

  Dr. Fletcher examined Plaintiff in May 2021. ECF No. 9-2 at 20 (summarizing the medical consultative examination); ECF No. 9-9 at 1564-70 (Ex. B19F, Dr. Fletcher's report). Dr. Painton reviewed Plaintiff's records and application in May 2021. ECF No. 9-3 at 311-14 (Ex. B3A, Dr. Painton's report). Dr. Hom reviewed the records and denied Plaintiff's request for reconsideration of her physical conditions in December 2021. *Id*. at 330 (Ex. B5A).

  In assessing the physical opinion evidence, the ALJ first noted that in examinations for Plaintiff's alleged ocular impairments, "claimant was also observed to have normal gait and to be able to stand without difficulty. It was also noted that she was doing well overall." ECF No. 9-2 at 20 (citing Exhibits B10F/130; B12F/21; B19F; B23F/19; B24F/79, 113; B25F/34; B26F/6, 9;

B32F; B33F; B37F; B38F/71). The ALJ then addressed Dr. Fletcher's consultative examination

report:

> In May 2021, the claimant participated in a medical consultative examination. During the examination, the claimant's gait was severely ataxic, slow, and hesitant. The claimant relied heavily on a cane to ambulate and she used the cane throughout the majority of the examination.  She was unable to ambulate more than several steps without the cane.
>
> The claimant also had a severe tremor in the right lower extremity as well as severe cogwheel rigidity in the right upper and lower extremities with frequent involuntary tremors.  The claimant appeared comfortable while seated, but she arose very slowly and was unsteady when rising.  The claimant was also observed to have ataxic and wide-based gait during other examinations around that time and she reported using a walking stick or a four-wheeled walker (Exhibits B19F; B38F/93-97).
>
> However, during the psychological consultative examination one month later, in June 2021, the claimant's posture and motor behavior were within normal limits.  She also had normal speech, coherent and goal-directed thought process, and her sensorium was clear.  A subsequent examination revealed normal gait and standing posture (Exhibits B21F; B25F/57).

ECF No. 9-2 at 20 (paragraph breaks added). The ALJ continued chronologically:

> **During subsequent physical therapy evaluations in August and September 2021, the claimant continued to demonstrate inconsistencies in motor movements**, visual motor tasks, **and balance, despite observable normal motor planning and coordination during the sessions**. . . .  **Additionally, the claimant's overall observable physical performance was widely inconsistent with previously observed gait and tasks in previous sessions**. . . . **[T]here were inconsistent reports of symptoms throughout all tests.  The claimant's physical performance in balance assessments were inconsistent and seemingly demonstrated voluntary purposeful movements.**
>
> Moreover, the claimant was able to ambulate from a chair to the physical therapy table without an assistive device, with normal balance.  It was noted that the claimant demonstrated high frequency purposeful, voluntary forward/backward shaking in a well-coordinated manner with no loss of balance throughout testing positions. . . .
>
> **The therapist noted that the claimant's exam continued to demonstrate**

**no abnormal findings or impairments and that there were questionable aspects of the claimant's performance that were not consistent and appeared voluntary. The therapist reported that they were not confident that the claimant's reports were valid** (Exhibits B23F/103; B25F/52-57).

Subsequent examinations also showed normal findings, including that the claimant was alert, oriented, and in no acute distress with normal communication ability. The claimant had normal gait and was able to stand without difficulty. She also had normal speech with no evidence of aphasia (Exhibit B38F/7, 26-27, 71).

ECF No. 9-2 at 21 (paragraph breaks and emphasis added).[12]

After addressing the record with respect to several other alleged conditions, in which the ALJ noted that Plaintiff was "allowed to return to horseback riding . . . and was overall doing very well [as of February 2021]," ECF No. 9-2 at 22, the ALJ then addressed the prior administrative findings from the state agency consultants on initial review (Dr. Painton) and on reconsideration (Dr. Hom):

The prior administrative medical findings of the State agency medical consultants are partially persuasive (Exhibits B3A; B5A). According to the State agency consultant at the initial determination level, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand and/or walk for four hours in an eight-hour workday. The State agency consultant indicated **the claimant requires a cane on all surfaces** and can never climb ladders, ropes, or scaffolds. Additionally, the claimant can occasionally balance, kneel, crouch, crawl, and climb ramps and stairs. The State agency consultant also determined the claimant should avoid all exposure to fumes, odors, dusts, gases, and poor ventilation.

At the reconsideration level, the State agency consultant made similar findings, except they determined the claimant can occasionally stoop and never crawl. The State agency consultant also indicated the claimant should avoid concentrated exposure to extreme cold, extreme heat, and noise. The claimant should avoid even moderate exposure to hazards, fumes, odors, dusts, gases, and poor ventilation. In support of these opinions, the State agency consultants cited to

---

[12] The court omits the ALJ's discussion of Plaintiff's alleged ocular conditions because Plaintiff does not challenge the ALJ's findings with respect to those conditions.

> evidence of POTS, catamenial epilepsy, vestibular abnormality, and left knee degenerative joint disease. They noted that the claimant's POTS was stable on examination, and she manages personal care, light chores, meal preparation, and shopping.

ECF No. 9-2 at 24 (paragraph break and emphasis added).

Relevant to Plaintiff's arguments on appeal, the ALJ found the opinions of Dr. Painton and Dr. Hom's unpersuasive to the extent they opined that Plaintiff needs to use a cane at all times:

> While the undersigned finds the claimant is limited to a reduced range of light work, the opinion that the claimant requires a cane for all surfaces is inconsistent with observations of normal gait, normal ability to stand, and normal motor planning. Further, there is no support for a limitation to no exposure to pulmonary irritants (Exhibits B10F/130; B24F/113; B25F/52-57; B38F/27).

*Id.* at 25.[13] The ALJ then went on to address the opinion of Dr. Fletcher:

> The opinion of the medical consultative examiner, Zachary Fletcher, D.O., is not persuasive (Exhibit B19F). According to Dr. Fletcher, there are no recommended limitations for sitting. Dr. Fletcher opined the claimant can stand for three to four hours and walk for two to three hours in an eight-hour workday. However, he also indicated the claimant should be allowed to sit every 30 minutes while standing and should only be walking about 20 minutes an hour. Additionally, Dr. Fletcher reported the claimant can frequently lift and carry about five pounds and occasionally lift and carry five to 10 pounds. He indicated she cannot lift anything heavier than she can tolerate in one hand due to using a cane and she is limited to carrying objects in the left hand only. He further determined the claimant can occasionally stoop, squat, crouch, and/or crawl. He also indicated the claimant would have difficulty using her right hand for fine tasks.
>    Dr. Fletcher determined a cane and walker were recommended continuously and she could never operate heavy machinery, drive, climb ladders, or work at unrestrained heights, despite Romberg testing being negative. In support of this

___

[13] The ALJ also found these physicians' opinions that Plaintiff needed to avoid all exposure to pulmonary irritants unpersuasive, but Plaintiff does not appeal concerning the lesser restriction that the ALJ found. ECF No. 9-2 at 18.

opinion, Dr. Fletcher cited to his observations of severe instability, moderate tremor and cogwheel rigidity in the right upper and lower extremities.

ECF No. 9-2 at 25 (paragraph breaks added). The ALJ found Dr. Fletcher's opinion unpersuasive:

> While this opinion is supported by Dr. Fletcher's observations of ataxic gait, use of a cane, motor tremors and rigidity, it is overly restrictive and inconsistent with the objective medical evidence. Specifically, the claimant had normal findings on subsequent examinations, including normal motor behavior, normal muscle strength, normal gait, normal ability to stand, and normal motor planning. The claimant also demonstrated inconsistencies and voluntary tremors and eye movements on a subsequent examination.

ECF No. 9-2 at 25 (citing Exhibits B10F/130; B19F; B21F; B24F/113; B25F/52-57, 7; B38F/27).

Plaintiff argues the ALJ erred in discounting these physicians' opinions that she is more restricted in her ability to stand, walk, move, balance, and carry weight than the ALJ found in the RFC. In particular, Plaintiff focuses on her need to use a cane, a point (as Plaintiff notes) on which all three of these physicians agreed. But Plaintiff addresses only two of the six records that the ALJ cited in rejecting Dr. Fletcher's opinion. *See* Opening Brief at 16-18. Plaintiff points to the ALJ having misinterpreted one record as showing the provider had found Plaintiff could ambulate normally without a cane, but that is only one of the several records to which the ALJ pointed in finding that Dr. Fletcher's, Dr. Painton's, and Dr. Hom's opinions were inconsistent with the objective medical evidence. Plaintiff also does not address the evidence that the ALJ cited, that at least one therapist questioned whether Plaintiff was voluntarily making her physical performance worse in a physical exam and questioned the validity of Plaintiff's reports. ECF No. 9-2 at 21.

Plaintiff also does not dispute that she was allowed to return to horseback riding, another

fact on which the ALJ relied in finding that Plaintiff was not as physically restricted as these three doctors opined. Nor does Plaintiff dispute that Dr. Fletcher examined Plaintiff only once, in May 2021, Dr. Painton reviewed the medical records only as of that month, and Dr. Hom reviewed the records in December 2021. The therapist's notes that question the veracity of Plaintiff's physical reports were made in September 2021, after Dr. Fletcher and Dr. Painton gave their opinions. *See* ECF No. 9-9 at 1699 (Ex. B23F/103, record of September 14, 2021 appointment with Jill A. Wohlgemuth, OT, of Colorado Canyons Adult Outpatient, noting "Pt continues to demonstrate inconsistencies in motor movement patterns . . . and balance"); ECF No. 9-10 at 1948-53 (Ex. B25F/52-57, including records of September 2, 2021 appointment with Dawn M. Johnson, PT, noting "pt demonstrated high frequency purposeful, voluntary forward/backward shaking in a well coordinated manner," "[e]xam continues to demonstrate no abnormal findings or impairments. There are questionable aspects of pt's performance in the exam, that are not consistent and appear voluntary," and "PT is not confident at this point that pt's reports are valid;" September 10, 2021 appointment with Ms. Johnson, noting "pt's overall observed physical performance was widely inconsistent w/ previous observed gait and tasks in previous sessions and w/ amb to/from tx rooms, turns, etc." and "inconsistent reports of sxs throughout all tests. Her physical performance in balance assessments was inconsistent and seemingly demonstrated voluntary, purposeful mvts."). Those records were not available to Dr. Fletcher and Dr. Painton, and although Dr. Hom noted (on reconsideration) that she requested records from Colorado Canyons Adult Outpatient on September 17, 2021, and received those records on October 8, 2021 (ECF No. 9-3 at 321, 329), her report of the medical evidence she reviewed does not mention the September 2021 treatment notes of Ms. Johnson. Under these

circumstances, the ALJ could reasonably conclude that Dr. Fletcher's, Dr. Painton's, and Dr.

Hom's opinions were not consistent with the objective medical evidence in the record.

In sum, the ALJ's findings that Dr. Fletcher's, Dr. Painton's, and Dr. Hom's opinions

of Plaintiff's need to use a cane (and other, greater physical restrictions than what the ALJ found in

the RFC) are supported by the substantial evidence that the ALJ cites in the decision.

Accordingly, the court finds no error here.

## CONCLUSION

For the reasons set forth above, it is ORDERED that the decision of the Commissioner is

AFFIRMED. Judgment shall enter accordingly.

Dated: September 25, 2024.                    BY THE COURT:

Susan Prose
United States Magistrate Judge